The next case on the calendar is Wigman v. Young Adult Institute. Good morning, your honors. Are you ready to proceed? Yes, please proceed. Thank you, your honor. May it please the court. I'm Alana Eisenstein. I represent Young Adult Institute, the appellant, and cross-appellee in this matter, and I reserve two minutes for rebuttal. The district court committed reversible legal error as to the ERISA claim by finding that Young Adult Institute, a not-for-profit that provides in-home services for individuals with disabilities, acted arbitrarily and capriciously in declining to admit Ms. Wigman into the Supplemental Executive Retirement Plan, a valuable top-hat plan reserved for only a select group of long-serving executives. Conversely, this court should affirm the dismissal and summary judgment of Ms. Wigman's Title VII and New York City human rights law claims in the cross-appeal because Ms. Wigman adduced no evidence that the board considered her gender when it declined to admit her to the SERP. To the contrary, the board's comprehensive written decision and the administrative record demonstrated the many non-discriminatory reasons for denying her claim. I want to talk first about the ERISA claim. The district court's summary judgment ruling was fraught with legal errors, and first and most primarily, the court did not give appropriate deference to the YAI board's reasonable interpretation of the SERP's... Can I ask you a question, please, as you go through this? I'm a little confused. The SERP, which is, I guess, the document, defines in 10.1.3, it defines participant as an employee who satisfies the eligibility requirements of subsection 10.1.2, and I'm not sure I... Maybe I missed it. I'm not sure I saw a discussion in your papers of 10.1.3 and the definition of participant to mean anybody who satisfies the eligibility requirements. Right. Well, so I think the question, Your Honor, is what the eligibility requirements are, what it means to be eligible to. And so 10.1.2 defines eligibility of those who've completed, a management employee who's completed 15 years of service, and then it says, again, they shall be eligible to participate in the plan. And I think the question at hand is whether the which is a term that can mean qualified for, not entitled to the benefit, to mean that the board had discretion whether or not to admit new participants into the plan. And in a... Can I just ask, it seems like, I mean, the court took a plain meaning approach within the four corners of the document at the summary judgment stage, and she read this to be unambiguous. You argue, and I understand your argument, that there's an ambiguity in the provision because eligibility requirements in 10.1.2 is in caps, you could say, but it's nowhere defined. And your position is that she erred in not discerning that ambiguity. I guess my question is, if we disagreed with you on that, and we thought this was an unambiguous document, did she err by not looking at the course of conduct, which you also say, court approval for every new participant in the plan, the board always approved, and did she need to consider that instead of limiting herself to a four corners approach? Your Honor, I absolutely think she erred in that respect. And that's important because this is a TOPAP plan. And so it's exempt from the writing requirement of ERISA. And that means that it's interpreted more akin to a traditional contract in which extrinsic evidence is admissible. And here, it is important. I mean, we do think that there's ambiguity in the term eligibility, especially because both the term shall is used in multiple ways in 10.1.3 itself, as well as term entitled to is used elsewhere in the document instead of eligible to. So we think there is ambiguity. But even if you think otherwise, the extrinsic evidence, which is... What about before you get to the extrinsic evidence, the last sentence of 10.1.2, entry into the plan as a plan participant shall be on the July 1 coincident. That also seems to suggest that once you're eligible, you are to enter into the plan as of the next July. I don't see any wiggle room there. And then I guess a follow up question. Is there any other provision that says the board has discretion to deny someone who is eligible? So, Your Honor, in terms of just the word shall, it just did that very phrase, 10.1.2, each management employee who shall complete 15 years of service doesn't necessarily connote a mandatory term. It connotes something like does or will, as opposed to must. But to your point about whether there's another plan term, this comes back to the fact that it is a plan. The discretion of the board can be a term that is where it's communicated, it's understood, and it is practiced, which it was here, which was the long... It was understood by Ms. Wegman herself that the board had to admit each member into the CERP. And that was her testimony at the trial and it was undisputed below. And so that is a plan term. Under Top Hat plans, unwritten terms are not only possible, they're frequent. And here it was consistently applied that that was the practice. She also, I believe her testimony was, or at least in the district court accepted this, that approval was automatic, that this was a rubber stamp in essence. Well, Your Honor, I disagree with that, that she didn't say it was automatic. She thought that it was a formality. However, it was a formality that she herself knew four times in a row was not granted because the CEO had recommended to the board her admission four different times before she actually made a claim for benefits. And each of those four times, she was not admitted to the plan. So I think that this court should also look at the purpose of the CERP, which is to compensate only this select group of valuable management employees, which the board determined she was not. You said highly qualified before you said select. And I suppose that's the question. She was properly qualified, I think, but she was not. One of the funny words here, and there are a lot of them, I'm afraid, one of the funny words is the word select. And the difference, there's a difference between the word select and the word selected. They were certainly a select group, but that doesn't necessarily follow that somebody had to individually select them, that they had to be selected in that sense. Well, Your Honor, I think that the practice of the board was to do exactly that. So dating back to the original entry into the CERP, and the reason that the CERP was created was to reward and to incentivize employees who are of value to the organization through this valuable retirement plan. I see my time has concluded. We'll hear from the appellee. Good morning, Your Honor. Sol Zeibel for the appellee, Karen Wegman. Your Honor, its questions are leading to the exact same argument that I'm making, that the plain language of the plan provides for Ms. Wegman's admission after she completed 15 years, her salary was not fully included in the taxation of Social Security benefits, and she attained management level. The district court determined, contrary to our original argument, that she did not reach that management level in 2001, but concluded that she did in 2006. So as of 2006, she met the requirements for eligibility in the plan. And yes, I certainly understand that my adversary wants to argue that eligible for the plan doesn't mean in the plan, except when you read 1 to 10.1.2 and 10.1.3, you cannot come to any other conclusion. Can I ask about that? In the reply brief, your adversary cites a Third Circuit case, Honoré New Valley Corporation, for the proposition that you can consider extrinsic evidence in interpreting top hat plans, the practice course of conduct. And we seem to have stated that as well. So can you address, you know, because it does seem like the district court did just a plain meaning approach to this document, which might be completely appropriate if it weren't a top hat plan, but may not be appropriate in the context of a plan like this. There are two arguments that I have against using the extrinsic evidence as evidence that my client should be excluded from the plan. First, in New Valley, the extrinsic evidence was from the author of the plan who said, yes, that was included in there, but it should not have been included in there. That's one. The second is the extrinsic evidence that we have in this case was direct testimony from Marcia Fava, who happened to have been the board chair and the person making the decision. And during the trial of this case, Ms. Fava testified, and it's on A-682, so there were, in response to the question, so there were no requirements other than... Ms. Isabel, when you are reading, you're turning away and I'm having trouble hearing. I'm sorry. Ms. Fava testified in response to direct questions about whether there was anything other than the language of 10.1.2 considered and admitting someone into the SERP. And she said no. So, it completely contradicts the argument that the extrinsic evidence was that there should be other conditions not enumerated in the SERP, in the plan, that should be considered. Additionally, and this is important, and I apologize for not fully addressing this in my 2013. Up until 2013, they did not have the right to interpret and resolve any ambiguities in the plan. They just did not reserve... What gave them the right in 2013? They amended the plan document. And they specifically enumerated that. But in doing so, they can't give themselves rights that will diminish any of the value that someone has already earned under the plan. And by allowing themselves in 2013 the right to exclude Ms. Wegman, they are diminishing value that she had already achieved as of 2006. And with regard to the eligibility, yes, she's eligible when she meets that requirement. And the only thing that has to be done is you need to hit July before she's admitted into the plan. Because it says admission into the plan is July coincident with meeting the other three requirements. Now, my colleague... That's what the plan says, but your client kept applying to the board for that. She deemed it a formality, but the board kept telling her no. So she wasn't in the plan for the next, you know, the next four tries. At least that would have been my understanding if I'd been in her position. Judge Livingston, this is the confluence of when we deal with lawyers who read documents and understand their meeting in the context of the law versus lay people who don't. The record is full of instances where she was promised that she would be put in the plan. In fact, there was even a fair amount of documentation in the record that says that she was promised to be in the plan as a ruse. So whether or not she thought she was in the plan, the plan language says that she's in the plan. It's not optional. And I know that my colleague likes to argue that it's for a select group. Well, the selection of that group is identified within the terms of the document itself. So your argument, just making sure I understand it. I mean, there would be nothing wrong here if the plan document had said a select group of management employees will be entitled to this extra compensation, tax deferred compensation, but only upon board approval at the total discretion of the board. If that had been in the document, you'd say fine, but if it's not in the document, the organization is limited to the language it put out to its employees. That's exactly my argument. They're limited to their own language and drafting the SERP and their attempts to amend the SERP to give them certain rights afterwards, which don't specifically say that they're adding themselves that right to provide that extra hurdle for my client. They've excluded the possibility of pursuing the argument that my colleague is advancing. They had the right to do it. They could have done it. They chose not to do it. And even their attempts in 2013 to reserve for themselves those rights fall far short of the mark because at that point, my client had already earned her benefits under the plan. And according to the plan, the straight language of the plan document, she should have been in come July once she met the three standards. You're saying it's, you're saying it's a, are you saying, I really don't mean you are, are you saying it's a contract and she had a contractual right and, and whatever the right may be to take in into account other evidence, she simply had, it's a contract and she had a contractual right under that contract. That's precisely what I'm saying. And not only am I New York contract law. So the language is clear on that issue. If it's all right with your honors, I'd like to move to that port portion of the appeal dealing with the title seven claim at this time. Judge Falia had found that my client was treated less well than male participants in the during her employment. Did my client make a complaint about being treated less well than male participants in the plan? And that's because the discrimination only occurred once her employment ended and it was determined that she wasn't in the plan. If she was in the plan, she would not have had the argument that she was treated less. Well, the problem with judge Falia's analysis is she accepts the argument offered by YAI of her not being in the plan because they misinterpreted the plan or judge Falia characterizes the reason as because YAI misinterpreted the plan. That is judge Falia replacing her view of the motive. Well, what is what is the evidence that her gender was a motivating factor? I mean, there doesn't seem to be a comparable similarly situated. There was a comparable similarly situated and that would be Mr. Rudd, who is the individual whose trajectory Ms. Wegman followed directly. Many years later, several years later. Yes. When he passed away as the CFO, she was immediately replaced into that position. When they when she started as an assistant controller, he was the controller and they had moved lockstep up the ladder together, who there's in the record indicates that she was he indicated to her that she was going to be in the plan. But things have changed. Things have things have changed from the time they put a rut into the plan. Changes in the tax laws. Thirteen years had gone by. Changes in the tax laws don't diminish the contractual obligation to provide that. The problem here is that the motive that YAI had was determined by judge Falia, and it shouldn't be. That motive should be determined by a jury. I see that I'm out of time unless I'm asked. I won't continue arguing. Nobody wants to ask. We'll hear rebuttal. Thank you, Your Honor. When evaluating the term eligible to if there is some doubt based on the and Ms. Wegman, the board approval was requirement to become a plan participant. If there is any doubt, summary judgment is not appropriate. This was a determination not made after trial that the district court made. She made it at summary judgment and you layer on the arbitrary and capricious review standard to the summary judgment standard. It is clear that the district court could not have reached that conclusion. My opponent's extensive citation to the trial record and whether or not the extrinsic evidence does or does not point to this being a plan term that the board had such discretion whether or not to admit Ms. Wegman makes clear that summary judgment was inappropriately granted. It's also clear that to go back to Judge Livingston's question that while the district court at first purported to look at the four corners of the document, she also viewed the plan through an improper conflict of interest analysis, finding that the board's view of the plan could not be deferred to because the board she found labored under a conflict of interest when it did not. As a not-for-profit volunteer board, they did not labor in a conflict of interest by also deciding on her participation in the plan. And moreover, their consideration of Ms. Wegman's oversight as CFO of a Medicaid fraud that led to an $18 million settlement against YAI, her poor job performance and her lack of commitment to the organization were all valid and reasonable reasons not to admit Ms. Wegman into the plan. Can I ask you to address your adversary's point that the plan provision that gives the board the sole and exclusive power to interpret the plan and resolve ambiguities is only put into the plan in 2013? So he essentially says you can't put any weight on that because it would operate if we adopted the board's view of how the plan should be interpreted to divest her of rights that she'd already secured. So your honor, the 1.3 which was added in 2013 does have some effect. It is a plan term that gives discretion as to the adjudication of her claim which didn't come in until after 2013. And it also confirms what was an already existing practice which was the plan term of discretion. How could the board in their her rights after the fact? So your honor, that's exactly the question at hand is whether or not she was automatically vested back in 2016 when she was elevated by virtue of Mr. Rutt's death to the position of CFO or whether she had to be admitted into the plan. If we conclude that the plan was clear and that she became eligible in 2006, could the board undo that in 2013 by amending the plan? Your honor, it could not undo it if she had a vested right. But the point we've made is that her right was not vested until or unless the board admitted her into the plan. And actually the board If you're right that the board always had that power, why did they need to add it explicitly through an amendment? Well your honor, there was prior litigation before this court in the levy case around these issues. And also it was clear that the board had to double down on its ability to restrict the admission of participants to the SERP in light of the significant negative tax consequences that would occur for excessive compensation for plan. But the levy case involved someone who was admitted to the plan by the board and was arguing that he was entitled to greater benefits than he'd received. Correct your honor, that was a case where he had vested his interest and prevailed and not having those diminished. But the point is that the board in many actions over the between 2005 and 2013 tried to confirm in multiple ways that it was not going to admit more people into the SERP. There are no further questions, I ask you reverse on the ERISA claims and affirm on the counter appeal. Thank you your honor. Thank you both, nicely done on both sides. We will take the matter under advisement.